L. F. SUNLIN, PETITIONER, *v.* COMMISSONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7483.   Promulgated May 4, 1927.

The petitioner and his wife, prior to their marriage on April 9, 1919, formed a business partnership in Michigan, each contributing property and services, and in the profits of which partnership they were to share equally. The business was conducted in the same manner after marriage as before. The income arising during the period April 9, 1919, to December 31, 1923, from the business, was taxed all to the husband, the petitioner. *Held*, that one-half of the income was the property and income of the wife and should not have been included in petitioner's income.

*George Maurice Morris, Esq.*, for the petitioner.
*Thomas M. Wilkins, Esq.*, for the respondent.

This proceeding involves a deficiency in income tax for the years 1919 to 1923, inclusive, of $1,206.46, for the year 1922 and $6,530.02 for the year 1923, there being overassessments of $2,403.28 in 1919 and $2,486.98 in 1920, and no tax due in 1921.

### FINDINGS OF FACT.

The petitioner is a resident of Flint, Mich.

In February, 1910, the petitioner began the operation of a motion picture theatre in Flint. As assistant manager he employed Miss Hazel Peters, who had had extensive experience as a professional musician, appearing throughout the world. As a result of her endeavors she had from her savings amassed considerable capital.

On the twelfth day of April, 1918, the petitioner entered into a lease effective for 25 years from May 1, 1918, upon certain premises in Flint suitable for the erection of a moving picture theatre. Lacking capital for the enterprise he proposed to his assistant manager, Miss Hazel Peters, that they enter into a partnership for the erection and operation of the theatre. This offer was accepted and a partnership was formed shortly prior to May 1, 1918. The partners agreed to share equally in ownership and income. The petitioner contributed his going business, and Miss Peters contributed $25,000 in cash, Liberty bonds, and war savings stamps, took full charge of the business, and operated the theatre. The petitioner on or about May 1, 1918, made public announcement of the partnership by communicating this information to his architect, employees of the theatre, the mother of Miss Hazel Peters, the president and the assistant cashier of the Citizens & Commercial Savings Bank of Flint, Michigan, and to others, some or all of whom he advised that Miss Hazel Peters had a one-half interest in the business.

On December 1, 1918, plans were begun for the erection of a new theatre on the premises leased. Such plans were completed on January 20, 1919, the work of razing the old building having been begun on January 15, 1919.

On April 9, 1919, the taxpayer and the said Miss Hazel Peters were united in marriage in Chicago, Ill.

Both the petitioner and his wife regularly received the income from the business and divided the same equally between them. Both filed annual income-tax returns in which each reported one-half of the income from the operations of their business.

The father and mother of petitioner's wife were both theatrical people, and before her marriage to Sunlin she had had a theatrical career and experience in the management of theatres. In 1919 she took entire charge of the business, her active control being necessitated by the illness of petitioner, he having suffered two paralytic strokes. When the partnership with petitioner was formed, he was about 61 years of age and she about 30 or 31 years old.

After her marriage to petitioner on April 9, 1919, she continued to have charge of the business, acting as general manager of what was known as the Savoy Theatre from 1919 to 1923, inclusive. She not only contributed $25,000 of the capital for the partnership mentioned, but also gave her time, energy, and managerial capacity toward its success, while her partner and husband, due to the condition of his illness, played only a comparatively small part in its management; and not until 1925 did she discover that there might be some question as to their legal right to conduct a partnership as husband and wife under the Michigan laws, but that question caused no change in the manner of conducting their business.

During the entire time, 1919 to 1923, inclusive, after the formation of the partnership, the income from the business was deposited in bank in a joint account in the name of petitioner and his wife.

### OPINION.

LITTLETON: The question raised by this proceeding is whether the income arising during the period from April 9, 1919—the date of the marriage of Hazel Peters and the petitioner—to December 31, 1923, inclusive, from the theatrical business described, was taxable all to the petitioner alone or to him and his wife Hazel on a separate basis.

The Commissioner asserts that the marriage of the partners dissolved and terminated the partnership and that thereafter the business was the sole business of the husband and all of the income therefrom should be taxed to him.

The petitioner insists that the income and the business itself belonged one-half to him and one-half to his wife and should be separately taxed.

The Commissioner insists that at common law, the legal existence of the wife was merged in that of the husband and that they were termed and regarded as one person in law and the husband was regarded as that person. He further insists that the Michigan Married Woman's Act has effected no change in this common law unity of husband and wife and that a contract of partnership with her husband is not included within the power granted by that Act.

The Michigan Married Woman's Act, 3 Mich. Comp. Laws, 1915, (11485) sec. 1, has very materially changed the common law theory of legal unity of husband and wife, for it provides:

That the real and personal estate of every female, acquired before marriage, and all property, real and personal, to which she may afterwards become entitled, by gift, grant, inheritance, devise, or in any other manner, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations and engagements of her husband, and may be contracted, sold, transferred, mortgaged, conveyed, devised or bequeathed by her, in the same manner and with the like effect as if she were unmarried.

It is true that in some cases decided by the Supreme Court of Michigan and cited by the Commissioner, such language as the following is used: " The intermarriage of the parties, who had formed a partnership, worked an instantaneous dissolution of the relation " and that "A contract of partnership with her husband is not included within the power granted by our statute to married women," but no decision is cited and none has been found which, when properly interpreted and applied to the question here presented, would warrant the holding that either the wife's interest in the business in which she and her husband were engaged or the income from her property and services become that of the husband.

Before marriage, while she was Hazel Peters, the contract of partnership with the petitioner was entered into; she contributed her half of the capital, $25,000 in cash, Liberty bonds, etc., and the success of the business was largely due to her energy, experience and business management, the petitioner being physically incapacitated by reason of two paralytic strokes.

If the marriage of Hazel Peters and the petitioner dissolved their partnership, as contended by the Commissioner, this certainly did not cause her to forfeit her interest in the business or the income.

While the partnership relation under the Michigan law may have been ended by the marriage of the partners, the wife's interest in the property and her ownership of one-half of the income from the business was not lost, nor acquired by her husband. As stated in *Gillespie* v. *Beecher*, 94 Mich. 374; 54 N. W. 167, " The married woman's act was passed for the protection of married women. It was intended

as a shield and not a sword. Its purpose was to enlarge her rights, not to contract them, and certainly it was not meant to deprive her of the right, either acting alone, or jointly with others, of protecting her interests in property, either real or personal." After marriage of the partners what had theretofore been a business partnership became a joint venture. The interest of the petitioner and his wife in the property and business and their respective rights to the income therefrom remained unchanged—one-half of the income belonged to the petitioner and one-half to his wife. Certainly, under the Michigan statutes, if the wife devotes her property and services to the production of separate income, such income is her separate property, and if she elects to make a separate return thereof for income-tax purposes, the Commissioner would not be authorized to tax such income to the husband. · We think the income of the wife is none the less her income merely because she joined her property and services with those of her husband in producing it. Cf. *Estate of George W. Randall*, 4 B. T. A. 679.

In these circumstances the petitioner and his wife were each the owner of one-half of the income arising from the operation of the Savoy Theater during the period April 9, 1919, to December 31, 1923. The Commissioner therefore erred in including in petitioner's income the one-half of the profits belonging to the wife.

> *Judgment will be entered on 15 days' notice, under Rule 50.*